UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBYN L. OLSON, | No. 2:13-cv-1038 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and will grant defendant's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on September 4, 2009, alleging disability beginning on November 30, 2008. Administrative Record ("AR") 138-44, 145-47, 148-50. Plaintiff's application was denied initially and again upon reconsideration. AR 66-68, 71-75. On January 24, 2012, a hearing was held before administrative law judge ("ALJ") Peter F. Belli. AR

1

32-56. Plaintiff appeared with non-attorney representation at the hearing, at which she and a vocational expert testified. See id. On March 30, 2012, the ALJ issued an unfavorable decision finding plaintiff not disabled. AR 7-21. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since November 30, 2008, the alleged onset date.
>
> 3. The claimant has the following severe impairments: seizure, obesity and depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; sit for 8 hour[s] in an 8-hour workday with normal breaks; stand and walk for 6 hours in an 8-hour workday with normal breaks; can never climb ladders, ropes and scaffolds; and should avoid working in unprotected heights and hazardous machinery. The claimant has no limitations on her ability to understand, remember and carry out simple short instructions; to make work related judgments; interact appropriately with the public, supervisors and co-workers; adjust to the changes in a work setting; and her ability to understand, remember and carry out detailed instructions is frequently limited.
>
> 6. The claimant is capable of performing past relevant work as a cashier, fast food worker and in-home care worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2008, through the date of this decision.

AR 10-22.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on March 29, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3.

////

////

1    FACTUAL BACKGROUND

2    Born on January 2, 1972, AR 138, plaintiff was 36 years old on the alleged onset date of

3    disability and 40 years old at the time of the administrative hearing.  Plaintiff has a high school

4    education and received training post-high school to become a Certified Nurse Assistant.  AR 37.

5    Plaintiff last worked in 2009 as a front end cashier at Walmart, but left that job after 4.5 years due

6    to depression.  AR 38, 241.  Prior to that, she worked as a care giver, but claims she can no longer

7    perform that work due to her seizures.  AR 39.

8    LEGAL STANDARDS

9    The Commissioner's decision that a claimant is not disabled will be upheld if the findings

10   of fact are supported by substantial evidence in the record and the proper legal standards were

11   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

12   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

13   180 F.3d 1094, 1097 (9th Cir. 1999).

14   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

15   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

16   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

17   Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

18   conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

19   N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

20   substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

21   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

22   Although this court cannot substitute its discretion for that of the Commissioner, the court

23   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

24   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and

25   Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

26   Cir. 1985).

27   "The ALJ is responsible for determining credibility, resolving conflicts in medical

28   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

3

(citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff seeks summary judgment on the grounds that the ALJ failed to incorporate the limitations found by the psychiatric consultative examiner and failed to provide clear and convincing reasons for rejecting plaintiff's testimony.  The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error.

A.  Opinion of Consultative Examining Psychologist

    1.  Legal Standards

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. Id.  A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is

1  contradicted, it may not be rejected without "specific and legitimate reasons" supported by
2  substantial evidence in the record. Lester, 81 F.3d at 830. Moreover, the Commissioner must
3  give weight to the treating physician's subjective judgments in addition to his clinical findings
4  and interpretation of test results. Id. at 832-33.

5  Further, an examining physician's opinion generally must be given greater weight than
6  that of a non-examining physician. Id. at 830. As with a treating physician, there must be clear
7  and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and
8  specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an
9  examining physician's contradicted opinion. Id. at 830-31.

　　　2.　　Relevant Background

11  On December 9, 2009, Dr. James J. Rosenthal, a clinical psychologist, examined plaintiff
12  for a disability assessment. AR 240-44. After outlining plaintiff's social and employment history
13  per self-reports, Dr. Rosenthal discussed plaintiff's mental status, noting that she was alert,
14  oriented, and able to follow and understand directions. He noted no evidence of thought
15  disturbance and found her speech to be "100% intelligible," though he indicated that she appeared
16  sad and she reported feeling depressed three to four days a week. He also noted a suicide attempt
17  by overdose six months prior to the examination.

18  Dr. Rosenthal assigned plaintiff a GAF score of 60 and diagnosed her with Major
19  Depression. AR 243. As to plaintiff's work-related assessment regarding her mental abilities,
20  Dr. Rosenthal provided as follows: (1) her ability to understand, remember, and follow simple
21  one or two step job instructions is not impaired; (2) her ability to relate to bosses, coworkers, and
22  the general public is mildly impaired; (3) her ability to tolerate the stress of day-to-day
23  employment is mildly impaired due to her depressed mood, low energy and decreased motivation;
24  and (4) her ability to sustain attention and concentration to complete daily work tasks is mildly
25  impaired due to her depressed mood, low energy and decreased motivation. AR 243-44.

26  The ALJ gave great weight to Dr. Rosenthal's opinion:

> The consultative psychologist, James Rosenthal, Psy.D., examined
> the claimant and diagnosed her with major depression. Despite her
> depressed moods, low energy and decreased motivation, Dr.

> Rosenthal opined the claimant's ability to understand, remember and follow simple one or two step job instruction was not impaired and had mild impairments in her ability to relate to bosses, coworkers and the general public; tolerate the stress of day-to-day employment; and sustain attention and concentration to complete daily work tasks. Great weight is given to Dr. Rosenthal's opinion because it supports the [*the ALJ failed to complete this sentence*].

AR 17.

### 3. Analysis

Plaintiff contends that the ALJ erred when he gave great weight to Dr. Rosenthal's opinion but then failed to include that portion of the psychologist's opinion limiting plaintiff's ability to understand, remember, and follow job instructions to simple one or two step instructions. Instead, per plaintiff, the ALJ added a limitation that plaintiff is frequently limited in her ability to carry out detailed instructions.

There is no merit to this argument. First, Dr. Rosenthal did not opine that plaintiff is limited to one- to two-step instructions. See AR 243. Rather, he opined that plaintiff's ability to understand, remember, and follow simple one- or two-step job instructions is *not impaired*. Stating that performance at a particular level is unimpaired is simply not the same thing as saying that performance at that level is the most a person can do. The ALJ in fact adopted Dr. Rosenthal's assessment, writing that plaintiff had no impairments with regard to her ability to understand, remember and carry out simple short instructions. Plaintiff does not explain how Dr. Rosenthal's assessment and the ALJ's finding differ.

Second, to the extent that the ALJ's additional limitation (i.e., that plaintiff was frequently limited in her ability to understand, remember and carry out detailed instructions) is not premised on Dr. Rosenthal's opinion, plaintiff does not explain how these assessments are inconsistent with each other. Indeed, the ALJ's additional limitation was more restrictive than Dr. Rosenthal's opinion. In any case, although plaintiff argues that the additional limitation is unsupported by the record, which she asserts reflects "severe memory and cognitive problems," none of the records cited by plaintiff support her position. What the records show instead is inconsistency regarding plaintiff's memory issues. See generally AR 289-305 (mental health therapist's notes from the Shasta Community Health Center reflecting that part of plaintiff's treatment plan was to improve

6

1 her memory issues per self-reports, despite the therapist's repeated findings that plaintiff has
2 normal recent and remote memory).

3 Lastly, plaintiff argues that the ALJ's failure to include Dr. Rosenthal's functional
4 limitations was erroneous because a person limited to simple one-to two-step instructions would
5 be unable to perform plaintiff's past relevant work, which, per the vocational expert, included
6 jobs with a specific vocational preparation ("SVP") level of 2 (unskilled).[1]  See AR 20-21.
7 Again, Dr. Rosenthal did not limit plaintiff to simple one- or two-step instructions, but instead
8 found that plaintiff did not have any impairment in her ability to understand, remember, and
9 follow simple one- or two-step job instructions.  But even accepting plaintiff's interpretation of
10 Dr. Rosenthal's opinion, the court finds no error because a limitation to simple instructions is not
11 inconsistent with the ALJ's conclusion that plaintiff can perform jobs having a SVP of 2
12 (unskilled).  See Lopez v. Astrue, 2011 WL 3206958, at *8 (N.D. Cal., July 27, 2011) (stating
13 that "a limitation to simple, routine, repetitive work is not inconsistent with the ability to perform
14 unskilled work"); Cha Yang v. Astrue, 2010 WL 3768122, *14 (E.D. Cal., Sept. 22, 2010)
15 (stating that the ability to perform simple, repetitive tasks is consistent with unskilled work); and
16 Orucevic v. Astrue, 2008 WL 4621420, *7 (W.D. Wash., Oct. 16, 2008) (finding no error in the
17 ALJ's conclusion that plaintiff could perform unskilled work because of her limitation to simple,
18 repetitive tasks and noting that the definition of unskilled work [20 C.F.R. § 416.968(a)]
19 describes repetitive tasks as the primary work duty).  See also Meissl v. Barnhart, 403 F. Supp. 2d
20 981, 983-85 (C.D. Cal. 2005) (reasoning SVP 2 did not conflict with the ALJ's prescribed
21 limitation of work which involved "simple, repetitive" tasks).

---

[1] SVP is a term of art used in the DOT to classify "how long it generally takes to learn the job." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (emphasis added).  The regulations contain definitions for the skill requirements for particular jobs, which are classified as "unskilled," "semi-skilled," and "skilled."  "Using the skill level definitions in [20 C.F.R. § § 404.1568] and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT."  Soc. Sec. Ruling 00–4p. An SVP level of 1 consists of unskilled jobs that can be learned after a short demonstration only, while an SVP level of 2 are those jobs that require "[a]nything beyond short demonstration up to and including 1 month."  20 C.F.R. § 404.1568(a); see also DOT, App'x C, "Components of the Definition Trailer" (4th ed.1991) (emphasis added); Terry, 903 F.2d at 1276 (holding that unskilled jobs are those that have an SVP of 30 days or less).

1      As plaintiff has not shown any error, reversal is not warranted on this ground.

2  B.      Credibility Assessment

3      1.      Legal Standards

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

    2.      Relevant Background

The ALJ summarized plaintiff's subjective complaints as follows:

> The claimant alleges the following: seizure, obesity and depression. Because of her impairments, she is unable to work. The claimant has a history of seizures and is triggered by stress. The claimant has problems with her concentration, memory and following both written and spoken instructions. The claimant is able to dress and bathe herself, performs household chores, cooks and go [sic] grocery shopping. The claimant has problems with understanding, memory, completing tasks and concentration.

AR 15.

The ALJ then concluded that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible. He based this conclusion on a number of factors, each addressed in turn.

The ALJ first referenced the minimal treatment record. He noted that, although plaintiff claimed her seizures have worsened with an alleged onset date of November 2008, there are no treatment records for 2008, only two for 2009, and three for 2010. In June 2011, plaintiff claimed she suffered a seizure causing jerking of her extremities, but she admitted that she did not see a neurologist or her primary care physician and did not go to the emergency room. AR 291. Social Security Ruling 96–7p, which provides guidance to the ALJ in considering a claimant's credibility, specifically explains that "an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purpose of judging the credibility of the individual statements." SSR 96–7p, 1996 WL 374186, at * 7 (July 2, 1996). Plaintiff does not contest the minimal treatment record, but instead states, post hoc, that she could not obtain consistent medical treatment because she was homeless and because she did not have insurance. But none of these arguments were made to the ALJ, none are included in the medical record and, despite her homelessness and alleged lack of insurance,[2] plaintiff was able to obtain treatment when needed. See, e.g., AR 237-38, 273-75, 277-80, 283-87. In light of the foregoing, plaintiff has not shown that the ALJ erred in discounting plaintiff's credibility based in part upon the record's lack of supporting medical evidence that would bolster plaintiff's testimony regarding her symptoms.

The ALJ also noted that the record showed conservative treatment. As to plaintiff's physical impairments, the record established that plaintiff's seizures generally occurred when she was off of medication, medication was shown to be effective, she had not seen a neurologist "for quite some time," and she had taken the same medication with effective symptom management

---

[2] A medical note dated July 1, 2009 indicated that "the patient will consult with her primary care physician for medication which is covered by her insurance company." AR 236.

for 8 years. AR 18. As to her mental impairments, plaintiff had never been psychiatrically hospitalized, was taking psychiatric medication that proved helpful, and last saw her psychiatrist in July 2009. AR 19. Despite this conservative treatment, the medical notes do not indicate that plaintiff's symptoms had worsened. On the contrary, the record reflects that medication controlled plaintiff's symptoms sufficiently that consistent medical supervision was unnecessary. Furthermore, the medical imagery of plaintiff's pelvis, brain, head and chest show no abnormalities or worsening.[3] On review, the court finds that the ALJ did not err in considering plaintiff's relatively conservative treatment in rendering his credibility determination. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (a favorable "response to conservative treatment undermines [a claimant's] reports regarding the disabling nature" of his or her impairments)); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ did not err in rejecting claimant's testimony regarding symptoms of pain because ALJ properly considered both the physician's failure to prescribe and the claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found physician's conservative treatment only to be suggestive of lower level of pain and functional limitation).

Lastly, regarding plaintiff's mental health, the ALJ noted an inconsistency in the record. Despite plaintiff's claim of debilitating mental impairments, Dr. Rosenthal made minimal findings of mental impairments, and the mental health notes from Shasta Community Health

---

[3] The ALJ, of course, cannot discount plaintiff's credibility solely on the basis of objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Bunnell v. Sullivan, 947 F.2d 341, 343, 345 (9th Cir. 1991). Nonetheless, medical evidence may be considered as one factor in assessing credibility. Bunnell, 947 F.2d at 345 (ALJ may consider lack of objective medical evidence to corroborate Claimant's subjective symptoms so long as it is not the only reason for discounting Claimant's credibility); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (same); Rollins v. Massanari, 261 F.3d at 857 (objective medical evidence may not be sole reason for discounting credibility but is nonetheless a legitimate and relevant factor to be considered in assessing credibility).

1   Center revealed that plaintiff's depressive symptoms were improved through medication
2   management and psychotherapy.  See AR 361 ("She states that her mood has improved
3   significantly [with medication]"), AR 363 (doctor's note that plaintiff's depressive symptoms
4   have improved).  A condition that can be controlled or corrected by medication is not disabling
5   for purposes of determining eligibility for benefits under the Act.  See Warre v. Comm'r of Soc.
6   Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  The ALJ may consider plaintiff's
7   responsiveness to medication in assessing credibility.  E.g., Walker v. Astrue, 1:11-cv-0713 AWI
8   BAM, 2012 WL 2872818, at *10 (E.D. Cal. July 12, 2012) (as part of the credibility analysis, the
9   ALJ properly considered the fact that plaintiff had "responded well to medication" and "appeared
10  stable") (citing Warre, 439 F.3d at 1006); Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1999)
11  (in assessing claimant's credibility, ALJ did not err in considering that medication "aided"
12  plaintiff's symptoms).

13       Plaintiff counters that the record establishes that plaintiff's symptoms are not controlled
14  by medication.  Although some portions of the record support this position, others, as noted supra,
15  indicate the opposite.  It is true that the record on this issue is subject to varying interpretations,
16  but the ALJ's findings are reasonable and supported by the record.  They are therefore not subject
17  to second-guessing by the Court.  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  The
18  ALJ did not err in reasoning that evidence of plaintiff's effective use of medication was
19  somewhat at odds with plaintiff's reports of having severe mental impairments.  Because the
20  court finds that the ALJ provided clear and convincing reasons in findings plaintiff not entirely
21  credible, reversal is not warranted on this ground.

## CONCLUSION

23  Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:
24  1. Plaintiff's motion for summary judgment is denied; and
25  2. The Commissioner's cross-motion for summary judgment is granted.
26  DATED: April 11, 2014

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11